UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DENISE RICHER | ) | CASE NO. 1:11CV2018 |
| | ) | |
| Plaintiff | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | **MEMORANDUM AND OPINION** |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying Denise Richer Disability Insurance Benefits (DIB) . The Plaintiff asserts that the Administrative Law Judge (ALJ) erred in his August 26, 2010 decision in finding that Plaintiff was not disabled because she could perform a range of sedentary work (Tr. 15-22). The Court finds that substantial evidence supports the ALJ's decision for the following reasons:

**I.   PROCEDURAL HISTORY**

Plaintiff, Denise Richer, filed her application for DIB on June 9, 2008, alleging she became disabled on April 2, 2006, but amended her onset date at the hearing to October 1, 2007 (Tr. 30-31). Plaintiff's application was denied initially and on reconsideration (Tr. 66-77). Plaintiff requested a hearing before an ALJ, and on July 13, 2010, a hearing was held where Plaintiff appeared with counsel and testified before an ALJ and a Vocational Expert (VE) also testified (Tr. 27-63).

1

On August 26, 2010, the ALJ issued his decision, finding Plaintiff not to be disabled (Tr. 15-22). Plaintiff requested a review before the Appeals Council, and the Appeals Council denied Plaintiff's request for review (Tr. 3-9). Therefore, Plaintiff has requested judicial review of the Commissioner's final decision pursuant to 42 U.S.C. Section 405(g).

## II.    STATEMENT OF FACTS

Plaintiff was born on January 19, 1969, and was forty-one years old at the time of the hearing (Tr. 32). She has a high school education, and the ALJ in this matter determined that she had past relevant work as a metal box finisher, cashier, shipper, and popcorn packager (Tr. 33, 21).

## III.    SUMMARY OF MEDICAL EVIDENCE

On April 29, 2006, Plaintiff underwent an MRI of her lumbosacral spine, with normal results (Tr. 262).

On December 21, 2007, Plaintiff underwent an MRI of her right shoulder, which showed minimal supraspinatus tendinosis without a rotator cuff tear (Tr. 260). X-rays of Plaintiff's right shoulder were negative (Tr. 261).

On January 9, 2008, Sanjay Kumar, D.O., a pain management specialist, administered a right subacromial joint injection (Tr. 253). Plaintiff reported that it decreased her pain by fifty percent (Tr. 253). Dr. Kumar reported that she had only mildly-positive impingement signs (Tr. 253).

On January 30, 2008, Plaintiff underwent an MRI of her cervical spine, which showed spondylosis at C3-4, C4-5, C5-6, and C6-7 without cord compression, foraminal stenosis, or acute disc herniation (Tr. 257). X-rays of Plaintiff's cervical spine showed mild degenerative changes, and

x-rays of her thoracic spine showed moderate scoliotic curvature and mild degenerative changes (Tr. 258-59).

On February 4, 2008, Plaintiff told Dr. Kumar that her current job as a sorter was not hurting her shoulder as much as had her prior job (Tr. 251). Dr. Kumar restricted Plaintiff to sorting work that involved no lifting, pushing, or pulling (Tr. 251). He recommended that Plaintiff undergo facet joint injections of her cervical spine, and opined that she was not a surgical candidate (Tr. 251).

On April 10, 2008, Mario M. Sertich, M.D., a neurosurgeon, reported that Plaintiff had mild scoliosis of the spine, limitation on hyperextension of her neck, and decreased range of motion of her upper arms (Tr. 304). She had no focal weakness, a sensory exam was fairly unremarkable, and her reflexes were brisk and symmetric (Tr. 304). Dr. Sertich reviewed Plaintiff's cervical MRI report, and noted that she had no significant central or foraminal stenosis, and "certainly no acute disc herniation" (Tr. 304). Dr. Sertich opined that Plaintiff had mainly mechanical pain, and recommended conservative treatment with home cervical traction and medications (Tr. 304).

On May 19, 2008, Dennis Carson, M.D., Plaintiff's family doctor, reported that Plaintiff had been off from work for approximately ten days due to parathoracic muscle pain and spasm (Tr, 370). He reported that Plaintiff had tenderness in the inferior lumbar spine and sacroiliac joint areas (Tr. 370). A straight leg raising test was negative (Tr. 370). Nevertheless, he diagnosed "disabling" degenerative disc disease of the neck and lumbar spine, and parathoracic spinal muscular strain with tenderness between the right scapula and the thoracic spine (Tr. 370). Dr. Carson prescribed medications, heat, and ice for Plaintiff's pain (Tr. 370).

On June 5, 2008, Dr. Carson reported that a low back exam was significant for tenderness in the lower spine, paralumbar spinal musculature, and sacroiliac joint areas (Tr. 367). A straight leg raising test was negative (Tr. 367). Dr. Carson diagnosed degenerative disc disease of the neck and

low back (Tr. 367). He adjusted Plaintiff's pain medication regimen (Tr. 367).

In June of 2008, Dr. Carson partially completed a medical source statement questionnaire (Tr. 314). He did not respond to questions related to when he first or most recently saw Plaintiff, her diagnosis, or a description of the clinical findings related to her condition (Tr. 314). He reported that Plaintiff had not undergone any surgical intervention and had received epidural steroid injections (Tr. 314). He listed Vicodin as her only medication (Tr. 315). Dr. Carson opined that Plaintiff could not lift, bend, push, pull, use her hands repetitively, sit, stand, or walk for more than ten minutes at a time (Tr. 315).

On August 31, 2008, Esberdado Villanueva, M.D., a state agency physician, reviewed Plaintiff's medical records and opined that she was capable of performing medium work that involved no climbing of ladders, ropes, and scaffolds, and only occasional stooping (Tr. 399-400). He opined that Plaintiff could frequently crouch and climb ramps and stairs (Tr. 400). On February 6, 2009, William Bolz, M.D. reviewed all of the evidence and affirmed Dr. Villanueva's assessment (Tr. 422).

On September 18, 2008, Dr. Carson reported that Plaintiff had tenderness in her inferior lumbar spine, a straight leg raising test was positive on the right, and her grip strength was symmetric (Tr. 409). Based on Plaintiff's complaints of numbness and tingling in her right arm, Dr. Carson diagnosed right arm radiculopathy (Tr. 409). He noted that all of Plaintiff's problems were stable, although causing symptoms (Tr. 409).

On December 17, 2008, Dr. Carson found no tenderness in Plaintiff's back and reported that her arms and legs were normal (Tr. 425). He diagnosed stable scoliosis and degenerative disc disease of the low back with pain modestly controlled with minimal activity (Tr. 425).

On March 10, 2009, Dr. Carson reported that Plaintiff's low back pain was well controlled with Vicodin (Tr. 423).

4

On June 10, 2009, Dr. Carson again reported that Plaintiff's back pain was well controlled with Vicodin (Tr. 429).

On August 6, 2009, Dr. Carson completed a Medical Source Statement form, in which he opined that Plaintiff could lift and carry no more than two pounds; stand and walk for no more than one hour per workday in five-minute intervals; and sit for no more than two hours per workday in ten-minute intervals (Tr. 436). Dr. Carson opined that Plaintiff could rarely or never climb, balance, stoop, crouch, kneel, push, pull, and crawl (Tr. 437). He opined that she could occasionally reach, handle, feel, and perform fine and gross manipulation with the left upper extremity, but could rarely or never perform these functions with the right upper extremity (Tr. 437). Dr. Carson limited Plaintiff to environments with no exposure to moving machinery (Tr. 437). He indicated that he had prescribed a brace for Plaintiff and opined that she required a sit/stand option (Tr. 437). Dr. Carson characterized Plaintiff's pain as "severe" (Tr. 437).

On September 2, 2009, Dr. Carson reported that Plaintiff's physical examination was significant for tenderness in the paracervical spinal musculature and along the cervical spine (Tr. 451). However, Plaintiff's radial pulses and grip strength were symmetric, and a straight leg raising test was negative (Tr. 451).

On April 15, 2010, Dr. Carson referred Plaintiff for an examination by John Collis, M.D., a neurosurgeon (Tr. 471). Dr. Collis reported that Plaintiff's gait was stable, but with a protective right limp (Tr. 471). Plaintiff's strength on functional testing of her arm and leg muscles was mostly within normal limits (Tr. 471). The range of motion of her hips was full and painless, and a straight leg raising test was negative (Tr. 471). Plaintiff's cervical and lumbar ranges of motion on flexion/extension, lateral bending, and rotation were decreased in all planes with pain (Tr. 471-72). Dr. Collis referred Plaintiff for an MRI of her cervical spine (Tr. 473).

5

On April 30, 2010, a cervical MRI revealed a slight progression of disc bulging and ventral ridging at C6-7, resulting in borderline canal stenosis at that level, stable ventral ridging at the C3-4, C4-5, and C5-6 discus, and a suggestion of mild foraminal narrowing on the right at C5-6 (Tr. 473).

On June 2, 2010, Plaintiff underwent a total body bone scan, which showed moderately-severe right-sided scoliosis in the midthoracic spine and mild degenerative changes in the lumbar spine, hips, right shoulder, and knees (Tr. 466). The remainder of the bone scan was within normal limits (Tr. 466).

### IV.  SUMMARY OF TESTIMONY

Plaintiff testified that she lived with her husband and her two children (Tr. 33). She was able to care for her personal hygiene and grooming, prepare meals, do light cleaning, drive, shop independently, and handle her own finances (Tr. 132). Her other activities included socializing with family or friends every day, playing bingo (although she played less often than in the past), playing with her children, and watching television (Tr. 132).

At the hearing, Plaintiff testified that her right hand and arm goes numb, that she drops things, including cups of coffee, water, and plates, with her right hand, and that she uses her left hand to work zippers, despite the fact that she is right-handed (Tr. 37, 46, 33). She also testified to having done past relevant work as a metal box finisher, cashier, shipper, and popcorn packager (tr. 33, 52-54). She stated that she was no longer able to work due to neck and back impairments (Tr. 35).

Thereafter, the ALJ asked the VE to assume a hypothetical individual with Plaintiff's vocational characteristics who was limited to sedentary work that required no more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, crawling, and rotating/flexing/extending the neck; no climbing of ramps or scaffolds; and no concentrated exposure

to temperature extremes, vibrations, hazardous moving machinery, and unprotected heights (Tr. 54). The VE testified that the hypothetical individual would be capable of performing more than 200,000 jobs in the national economy (Tr. 56-57). The ALJ asked the VE to additionally assume that the hypothetical individual was unable to reach overhead with her right hand, and the VE testified that this limitation would not affect the individual's ability to perform the identified jobs (Tr. 61-62).

### V.  STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b) and 416.920(b) (1992);

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. 404.1520© and 416.920(C)(1992);

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see* 20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. 404.1520(d) and 416.920(d) (1992);

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e) and 416.920(e) (1992);

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f) and 416.920(f) (1992).

*Hogg v. Sullivan,* 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward

with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering her age, education, past work experience and residual functional capacity.  *See, Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir. 1990).

## VI.  STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by Section  205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. Section 405(g).  Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards.  *See, Abbott v. Sullivan,* 905 F.2d 918, 922 (6th Cir. 1990).  The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion.  *See, Walters v. Commissioner of Social Security,* 127 F.3d 525., 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla of evidence, but less than a preponderance.  *See, Richardson v. Perales,* 402 U.S. 389, 401 (1971).  It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion.  *See, id., Walters,* 127 F.3d 525, 532 (6th Cir. 1997).  Substantiality is based upon the record taken as a whole.  *See, Houston v. Secretary of Health and Human Servs.,* 736 F.2d 365 (6th Cir. 1984).

## VII.  ANALYSIS

Plaintiff raises two issues:

8

> I. Whether the ALJ erroneously failed to find that Plaintiff's carpal tunnel syndrome and lumbar degenerative disc disease were severe impairments.
>
> II. Whether the ALJ failed to give proper weight to the opinions of Plaintiff's treating physician.

In this case, the ALJ found that Plaintiff performed substantial gainful activity from October 2007 through May 2008, and, therefore, denied her benefits on that basis through May 31, 2008 (Tr. 15, Finding 2). The ALJ found that, through her date last insured (March 31, 2010), Plaintiff had cervical and thoracic degenerative disc disease, scoliosis, degenerative joint disease of the knees, hips, and right shoulder, and obesity, impairments that were severe but did not meet or equal the criteria of any of the listed impairments (Tr. 16, Findings 4-5). The ALJ found that Plaintiff had the residual functional capacity to perform work consistent with the limitations that he presented in his hypothetical question to the VE (Tr. 17, Finding 6). The ALJ found that Plaintiff could not perform any of her past relevant work (Tr. 21, Finding 7). However, based on the VE's testimony, the ALJ found that Plaintiff was capable of making a vocational adjustment to a significant number of jobs on and prior to her date last insured, and, therefore, was not disabled (Tr. 21-22, Findings 11-12).

The Court finds that substantial evidence supports the ALJ's finding that carpal tunnel syndrome and lumbar degenerative disc disease were non-severe impairments. Plaintiff has the burden of demonstrating that an impairment is "severe." *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). An impairment or combination of impairments is not "severe" if it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. Section 404.921(a). Basic work activities are defined in the regulations as the abilities or aptitudes necessary to do most jobs. 20 C.F.R. Section 404.1521(b). An impairment or combination of impairments is not "severe" when medical

9

evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to perform basic work activities. Social Security Ruling (SSR) 85-28.

Based upon substantial evidence, the ALJ correctly determined that the carpal tunnel syndrome was not an impairment because there was no evidence that it would have more than a minimal effect on Plaintiff's ability to perform basic work activities. In determining whether an individual is disabled, the relevant consideration is not the individual's diagnosis, but the functional limitations resulting therefrom. *See, Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988). The ALJ stated that, despite Plaintiff's carpal tunnel syndrome, Dr. Carson found Plaintiff's grip strength to be normal on September 18, 2008 and September 2, 2009 (Tr. 409, 451). In addition, on April 15, 2010, Dr. Collis reported that the strength of Plaintiff's upper extremities was normal and her pin and touch sensation were intact (Tr. 471). Although Plaintiff alleged significant limitations of her right hand and arm, the ALJ found that these allegations were not fully credible because they were inconsistent with the medical evidence (Tr. 19-21). Since there was no evidence, apart from Plaintiff's subjective complaints, that her carpal tunnel syndrome would significantly limit her ability to perform basic work activities, the ALJ correctly determined, based upon substantial evidence, that said condition was not severe.

There was also little evidence that Plaintiff's lumbar degenerative disc disease would significantly limit her ability to perform basic work activities. An April 2006 MRI of Plaintiff's lumbosacral spine indicated normal findings (Tr. 262). A bone scan in June of 2010 revealed mild degenerative changes of the lumbar spine (Tr. 466). With the exception of Dr. Carson's single report of a positive straight leg raising test in September 2008, all of Plaintiff's straight leg raising tests were negative (Tr. 367, 370, 409, 451, 471). Furthermore, one year later, in September 2009, Dr. Carson

reported that Plaintiff's straight leg raising test was negative(Tr. 451).  Although Plaintiff complained of low back pain, Dr. Carson reported that her pain was well controlled with Vicodin (Tr. 423, 429). Because the evidence showed that the mild degenerative changes in Plaintiff's lumbar spine would not significantly limit her ability to perform basic work activities, the ALJ correctly determined that this was not a "severe" impairment.

Thereafter, the ALJ proceeded with the sequential analysis because he found Plaintiff's cervical and thoracic degenerative disc disease; scoliosis; degenerative joint disease of the knees, hips, and right shoulder; and obesity to be "severe," and then went on to consider whether all of Plaintiff's impairments, both severe and non-severe, affected her residual functional capacity (Tr. 17-21).

Even though the ALJ rejected Plaintiff's subjective complaints of difficulty using her right arm and debilitating low back pain as not fully credible, the ALJ considered them in formulating the residual functional capacity assessment (Tr. 17-21).  The ALJ limited Plaintiff to sedentary work that required no climbing of ladders, ropes, or scaffolds; only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; no overhead reaching; and no concentrated exposure to temperature extremes, vibrations, hazardous moving machinery, and unprotected heights (Tr. 17, Finding 6).  Therefore, despite the ALJ's finding that Plaintiff's carpal tunnel syndrome and lumbar degenerative disc disease were not "severe," he, nevertheless, considered the limitations resulting from those impairments in his decision.

The Court finds that substantial evidence supports the ALJ's finding that Dr. Carson's opinions were entitled to little weight (Tr. 20).  The opinion of a treating physician as to the nature and severity of an impairment is only entitled to controlling weight if it is supported by medically-acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with  other substantial evidence in the case.  20 C.F.R. Section 404.1527(d).

11

The ALJ gave little weight to the extreme limitations reported by Dr. Carson in his June 2008 and August 2009 Medical Source statements because they were not supported by the objective medical evidence or Plaintiff's activities (Tr. 20). In contradiction to his opinion that Plaintiff suffered from extreme limitations, Dr. Carson's treatment notes from May and June of 2008 indicated only tenderness in Plaintiff's lumbar spine and sacroiliac joint areas (Tr. 367, 370). In December of 2008, Dr. Carson reported no tenderness in Plaintiff's back and normal examinations of her arms and legs (Tr. 425). Dr. Collis reported that Plaintiff's gait was stable, her arm and leg strength was mostly within normal limits, the range of motion of her hips was full and painless, and a straight leg raising test was negative (Tr. 417). The ALJ correctly relied on these clinical findings in undermining Dr. Carson's opinions.

Plaintiff's activities also contradict the limitations Dr. Carson claimed. The ALJ noted that Dr. Carson's June 2008 opinion of disability was lacking in credibility, since the Plaintiff was working at a gainful activity up to the date of the opinion (Tr. 20). In addition, Plaintiff stated that she was able to care for her personal hygiene and grooming, prepare meals, do light cleaning, drive, shop independently, handle her own finances, socialize with family and friends, play bingo (although she played less often than in the past), and play with her children (Tr. 132). These activities are substantial evidence in support of the ALJ's finding that Plaintiff was capable of performing a limited range of sedentary work.

In addition, Drs. Villaneueva and Bolz opined that she was capable of performing a limited range of medium work (Tr. 399-400, 422). *See,* SSR 96-6p. Nevertheless, the ALJ reduced Plaintiff's residual functional capacity to sedentary work based on her subjective complaints and the evidence submitted at the hearing (Tr. 17, Finding 16). Even with the significant exertional and postural limitations found by the ALJ, a VE testified that Plaintiff would be capable of performing more than 200,000 jobs in the national economy (Tr. 56-57). The Court finds that the vocational expert's

12

testimony, based upon an accurate hypothetical, constitutes substantial evidence that Plaintiff is not disabled.

### VIII. CONCLUSION

Based upon a review of the record and law, the undersigned affirms the ALJ's decision. Substantial evidence supports the finding of the ALJ that Plaintiff retained the residual functional capacity (RFC) to perform a range of sedentary work, and, therefore, was not disabled. Hence, she is not entitled to DIB.

Dated: June 11, 2012  /s/*George J. Limbert*
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE